UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JDK EXCAVATING LLC
7796 Norwalk Rd
Medina, OH 44256

      Plaintiff,

      vs.

R & K ENERGY SERVICES, INC.
348 S. Eaton Street
Berwick, PA 18603-4231

-and-

CHRISTOPHER E. KOVALCHICK
152 Endless View Ln.
Tunkhannock, PA. 18657

-and-

JOSHUA M. READLER
348 S. Eaton Street
Berwick, PA 18603-4231

-and-

JOHN DOE
(Name and address unknown)

CASE NO.:

JUDGE


**VERIFIED COMPLAINT**



(*Jury Demand Endorsed hereon*)


Plaintiff, JDK Excavating, LLC, by and through undersigned counsel, states the following

as its Complaint against Defendants, R&K Energy Services, Inc. ("R&K"), Christopher E.

Kovalchick ("Mr. Kovalchick"), Joshua M. Readler ("Mr. Readler") and John Doe, as verified by

the Affidavit of Fred Esposito filed herewith and incorporated herein as **Exhibit A**:

1

## JURISDICTION AND VENUE

1. The Court has subject jurisdiction pursuant to the following statutes:

a. 28 U.S.C.§1332, which gives district courts original jurisdiction over civil actions were here is complete diversity of citizenship and an amount in controversy exceeding $75,000; and

b. 28 U.S.C. § 1367 which gives the district court supplemental jurisdiction over state law claims.

2. This Court has personal jurisdiction over R&K because it advertises and conducts business activities in Ohio, and Plaintiff's claims arise from R&K's business activities in this District, including the sale of an excavator to Plaintiff and shipping of the excavator to Plaintiff in this Judicial District.

3. This Court has personal jurisdiction over Christopher E. Kovalchick and Joshua M. Readler because they each have conducted business in this District, have conducted the activities that are the subject of the claims asserted herein, and have minimum contacts with this District.

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants transact business here.

## STATEMENT OF FACTS

**A.     The Parties**

5. R&K is a Pennsylvania corporation for profit having its principal place of business at 348 S. Eaton Street, Berwick, PA 18603-4231, and, upon information and belief, is not registered to conduct business in this District.

2

6.      Upon information and belief, Christopher E. Kovalchick is the Secretary and Treasurer of R&K and resides at 152 Endless View Ln., Tunkhannock, PA. 18657.

7.      Upon information and belief, Joshua M. Readler is the President and "Governor" of R&K and owns or rents the property located at 348 S. Eaton Street, Berwick, PA 18603-4231.

**B.      R&K's Business and Advertising in Ohio**

8.      R&K is an online auction seller of used commercial equipment, which advertises its available inventories in Ohio through various industry sites and its own marketing channels, including "TreeTrader.com", "TractorHouse" and "Need Turf Equipment."

9.      R&K also has a direct Ohio contact for potential buyers.  For regional listings, they direct buyers to call their Ohio contact line (216-854-0411) or visit the "R & K Energy Services Inc. Auctioneers in USA Directory" to find local auction options and inventory.

10.      R&K advertises on its website that "R&K Energy Services Inc. is devoted to providing great pre-owned equipment at below market prices.  ***Equipment listed for sale is inspected and refurbished in our shop***." (Emphasis added).

11.      R&K expressly represents the number of hours for each piece of equipment it sells on its website.  Each piece of equipment it lists on the website for sale includes in the ad the year, manufacturer, model, ***hours***, condition and detailed description of features (*Esposito* Aff., ¶4).

**C.      Plaintiff's Purchase of Excavator from R&K through Online Auction Website**

12.      On or about February 11, 2026, Plaintiff purchased from R&K through online auction a used 2018 CAT 305.5 E2 Excavator (the "Excavator") for the sum of $44,000 (the "Purchase Transaction").  In addition, Plaintiff paid the sum of $1,000 to R&K for shipping of the Excavator to Plaintiff in Ohio (*Esposito Aff.*, ¶2).

13. The Excavator was expressly advertised by R&K on its website as having 3,221 total hours of use (*Esposito Aff.*, ¶5).

14. The invoice for the Purchase Transaction dated February 11, 2026 (the "Invoice"), which was not received until after the purchase was made by Plaintiff, includes the following language:

> SOLD AS IS WHERE IS. ALL SALES ARE FINAL. NO RETURNS NO GUARANTEE NOR WARRANTY UNLESS PROVIDED FROM MANUFACTURER. SOLD FREE AND CLEAR OF ANY LIENS OR ENCUMBRANCES. ALL DEPOSIT ARE NON-REFUNDABLE. WE DON'T GUARANTEE HOURS OR CONDITION OF MACHINE.

A true and correct copy of the Invoice is filed herewith and incorporated herein as **Exhibit B**.

15. In addition, the Invoice included in the item description the language "USED Hours: 3,221." (See "Exhibit B")

16. Prior to entering into the Purchase Transaction, R&K, by and through Mr. Kovalchick, assured Fred Esposito, the owner and Managing Member of Plaintiff, that everything was in working order and even sent Mr. Esposito a video of the machine running (*Esposito Aff.*, ¶¶1, 6)

17. Mr. Esposito quizzed Mr. Kovalchick extensively on the telephone before Plaintiff purchased the machine as to the condition of the essential components, including verification that all fluids had been changed and that the drives were in good condition (*Esposito Aff.*, ¶7).

18. R&K never offered an opportunity for pre-sale inspection of the Excavator by Plaintiff. Instead, R&K misrepresented the condition of the Excavator, its components and even fluids in response to extensive, direct questioning by Mr. Esposito (*Esposito Aff.*, ¶7).

**D.**     **Plaintiff's Discovery that Excavator Had Twice as Many Operating Hours than Advertised and Expressly Represented by R&K, and was in Much Worse Condition than Represented by R&K.**

19.     Upon receipt of the Excavator, it was apparent to Plaintiff that the condition of the Excavator was not consistent with a machine having just 3,221 hours of operation (*Esposito Aff.*, ¶9).

20.     It was evident upon inspection that R&K did not even change the fluids in the Excavator before selling it.  There were a large number of metal shavings in the oil, which Plaintiff promptly changed to limit any additional damage to the machine (*Esposito Aff.*, ¶10).

21.     There, in fact, was no refurbishment done by R&K, contrary to the representations made on its website (*Esposito Aff.*, ¶11).

22.     The Excavator was not safe to operate in the condition it was received by Plaintiff (*Esposito Aff.*, ¶12).

23.     Shortly after the Excavator was received and Plaintiff began to operate it, the Caterpillar 305.5E2CR Final Drive with Travel Motor failed and had to be replaced.  R&K agreed to pay the cost of the new drive (*Esposito Aff.*, ¶13).

24.     The replacement final drive with travel motor would have cost $5,630 through CAT.  Mr. Esposito located the same parts through another equipment dealer, ConEquip in Sanborn, New York, on or about March 20, 2026, at the lower cost of $3,210 to save R&K cost (*Esposito Aff.*, ¶14).

25.     Due to the inconsistency in the advertised hours and actual condition of the Excavator, Plaintiff had it examined by a CAT Electronic Technician, whom determined the Excavator actually had **6,709** "Total Operating Hours."  See April 7, 2026 Product Status Report filed herewith and incorporated herein as **Exhibit C** (*Esposito Aff.*, ¶15).

26. In addition to the first final drive and travel motor that had to be replaced, the other final drive motor has been determined to be close to failure and will need to be replaced (*Esposito Aff.*, ¶16).

27. Further, Plaintiff has had to replace a bad Top Roller, weld and bore main bores on Quick Coupler, rebuild Swivel Joint, purchase missing covers to protect the Engine and Swivel Joint, and purchase numerous parts and tools to re-bush/re-pin Stick, Boom and Swing Frame (*Esposito Aff.*, ¶17).

**E. Discovery of Impaired Value of the Excavator**

28. Due to the much higher operating hours, CAT determined that the Excavator is not worth more than $30,000 (*Esposito Aff.*, ¶18).

**F. R&K's Refusal to Buy Back or Exchange Excavator for Conforming Equipment**

29. R&K has refused to take the Excavator back unless Plaintiff first pays off its loan for the purchase of the Excavator at the over-inflated price paid, and then sells it back to R&K at a price R&K is willing to pay. Plaintiff would then have to purchase another excavator from R&K to replace the current Excavator. This was told to Mr. Esposito by Mr. Kovalchick (*Esposito Aff.*, ¶19).

30. When Mr. Esposito advised Mr. Kovalchick that such terms were impossible for Plaintiff and not acceptable, he cursed at Mr. Esposito and told him that R&K did not want the Excavator back (*Esposito Aff.*, ¶20).

**G. R&K's Refusal to Comply with UCC Notice of Revocation**

31. On June 22, 2026, Plaintiff emailed to R&K and its legal counsel a Notice of Revocation of Acceptance pursuant to UCC 2-608 and Ohio Revised Code § 1302.66 (the

"Notice of Revocation").  A copy of the Notice of Revocation has been filed herewith and is incorporated herein as **Exhibit D** (*Esposito Aff.*, ¶21).

32.     On July 10, 2026, R&K advised Plaintiff that it would not honor the Notice of Revocation.

**COUNT I**

**(Revocation of Acceptance; UCC 2-608; Ohio Revised Code § 1302.66)**

33.     Plaintiff restates each of the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

34.     The defects described herein substantially impair the value of the Excavator.

35.     The defects, including the 50% underreported operating hours, were hidden, not disclosed and not easily discoverable by Plaintiff at the time of the Purchase Transaction and Plaintiff's acceptance of the Excavator (*Esposito Aff.*, ¶22).

36.     The Notice of Revocation was sent to R&K before the Excavator underwent any substantial change in its condition other than that caused by its own defects.  The Excavator has only incurred normal wear and tear from limited use in order to maintain Plaintiff's business (*Esposito Aff.*, ¶23).

37.     Plaintiff revoked acceptance within a reasonable time after Plaintiff discovered or reasonably should have discovered the grounds for revocation, and provided proper notice to R&K.

38.     By reason thereof, Plaintiff is entitled to revoke acceptance of the Excavator, recover the purchase price paid, and exercise the rights of a buyer who has rejected the goods, including the recovery of incidental and consequential damages.

7

## COUNT II

### (UCC Fraud and Material Misrepresentation; UCC 2-721; R.C. § 1302.95)

39. Plaintiff restates each of the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

40. R&K materially, intentionally and fraudulently misrepresented the operating hours and condition of the Excavator.

41. As a direct and proximate result of R&K's material, intentional and fraudulent misrepresentation, Plaintiff has suffered and will continue to suffer economic and non-economic damages and is entitled to an award thereof in amounts in excess of $75,000 to be determined at trial, including, but not limited to the $44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, over $2,000 in parts purchased for repairs to the Excavator, attorney fees and loss of business opportunity due to down time caused by the Excavator's defects (*Esposito Aff.*, ¶24).

## COUNT III

### (Violation of Ohio Deceptive Practices Act; R.C. Chapter 4165)

42. Plaintiff restates each of the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

43. R&K represented that the Excavator had a particular standard, quality, or grade that it did not. Ohio Rev. Code § 4165.02(A) (7).

44. R&K engaged in a deceptive act by falsely advertising and passing off the Excavator has having only 3,221 operating hours and being in a condition consistent with that number of hours when, in fact, the Excavator had over twice that many operating hours and was not in a condition consistent with operating hours of just 3,221.

8

45. Advertising false operating hours directly misrepresented the fundamental wear, lifespan, and quality of the Excavator at the time of purchase by Plaintiff (*Esposito Aff.*, ¶25).

46. The deceptive act occurred in the marketplace and influenced Plaintiff's decision to purchase the Excavator (*Esposito Aff.*, ¶26).

47. Despite multiple oral and written demands by Plaintiff, R&K has failed or refused to cure the deceptive conduct.

48. As a direct and proximate result of R&K's deceptive acts, Plaintiff has suffered actual economic damages in an amount in excess of $75,000 to be established at trial, which includes, without limitation, the $44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, over $2,000 in parts purchased for repairs to the Excavator, and loss of business opportunity due to down time caused by the Excavator's defects (*Esposito Aff.*, ¶24).

## COUNT IV

### (Fraudulent Misrepresentation)

49. Plaintiff restates each of the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

50. Defendants intentionally and with reckless disregard for the truth, provided false statements of fact and made false representations to Plaintiff, with knowledge of the statements' and representations' falsity, including, without limitation, that the Excavator had actual operating hours of 3,221, was in good running condition, and had been inspected and refurbished by R&K prior to the Purchase Transaction (*Esposito Aff.*, ¶27).

51. Defendants intended to deceive Plaintiff to cause it to rely upon the fraudulent misrepresentations.

52. Plaintiff justifiably relied upon the fraudulent misrepresentations, and suffered damages in an amount to be established at trial as a direct and proximate result of its justifiable reliance, which includes, without limitation, the $44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, over $2,000 in parts purchased for repairs to the Excavator, loss of business opportunity due to down time caused by the Excavator's defects, and is entitled to an award of punitive damages (*Esposito Aff.*, ¶24).

## COUNT V

### (Fraudulent Inducement)

53. Plaintiff restates each of the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

54. Prior to the Purchase Transaction, Defendants represented that the Excavator had actual operating hours of 3,221, was in good running condition, and had been inspected and refurbished by R&K.

.55. Defendants intended Plaintiff to rely upon said fraudulent misrepresentations and knew that Defendant would, in fact, rely upon said representations.

56. Defendants intended to deceive Plaintiff when they made the fraudulent misrepresentations.

57. Plaintiff reasonably relied in the exercise of due diligence to his detriment on the representations, omissions, concealments and suppressions of R&K set forth and described herein (*Esposito Aff.*, ¶28).

58. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has sustained compensatory damages in an amount in excess of $75,000 to be established at trial as a direct and proximate result of its justifiable reliance, which includes, without limitation, the

$44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, over $2,000 in parts purchased for repairs to the Excavator, loss of business opportunity due to down time caused by the Excavator's defects, and is entitled to an award of punitive damages (*Esposito Aff.*, ¶24).

WHEREFORE, Plaintiff, JDK Excavating, LLC, demands judgment against Defendants, R&K Energy Services, Inc., Christopher E. Kovalchick, Joshua M. Readler and John Doe, as follows:

A.      As to Count I, Plaintiff prays as follows:

1.      An order declaring that Plaintiff's revocation of acceptance of the Excavator is valid and justified;

2.      Judgment in favor of Plaintiff in the amount of $45,000, representing the return of the purchase price for the Excavator and shipping charges; and

3.      Incidental and consequential damages in an amount in excess of $30,000 to be determined at trial, including, but not limited to, costs for transport, storage and substitute cover, as applicable, labor, parts, repairs, loss of business opportunity and attorney fees.

B.      As to Count II, for judgment against R&K for economic and non-economic damages in an amount in excess of $75,000 to be established at trial, including, but not limited to the $44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, and over $2,000 in parts purchased for repairs to the Excavator, loss of business opportunity and attorney fees.

C.      As to Count III, for judgment against R&K for Plaintiff's actual economic damages in an amount to be established at trial, including, but not limited to the $44,000 purchase price and

11

$1,000 shipping charge paid for the Excavator, $9,000 in labor hours, and over $2,000 in parts purchased for repairs to the Excavator;

D.      As to Count IV, for judgment against Defendants, jointly and severally, for economic and non-economic damages in an amount to be established at trial, including, but not limited to the $44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, and over $2,000 in parts purchased for repairs to the Excavator, and punitive damages in an amount sufficient to punish and deter Defendants from such conduct in the future;

E.      As to Count V, for judgment against Defendants, jointly and severally, for economic and non-economic damages in an amount to be established at trial, including, but not limited to the $44,000 purchase price and $1,000 shipping charge paid for the Excavator, $9,000 in labor hours, and over $2,000 in parts purchased for repairs to the Excavator, and punitive damages in an amount sufficient to punish and deter Defendants from such conduct in the future;

F.      As to all counts, an additional award of punitive damages and reasonable attorney fees to the extent permitted by applicable law in amounts to be determined at trial;

G.      As to all counts, prejudgment and post-judgment interest, and Plaintiff's court costs; and

H.      As to all counts, any and all other and further relief, in law or equity, as this Court deems appropriate.

Respectfully submitted,

GRUBB & ASSOCIATES, LPA

*/s/ Mark E. Owens*
Natalie F. Grubb (0062596)
Mark E. Owens (0068335)
437 W. Lafayette Road, Suite 260-A
Medina, Ohio 44256
Ph: (330) 725-7252/Fax: (330) 723-1095
E-Mail: officemgr@grubbandassoc.com
*Attorneys for Plaintiff*

## **JURY DEMAND**

The Plaintiff hereby demands a trial by jury on any and all triable issues, such demand being made pursuant to Rule 38 of the Federal Rules of Civil Procedure.

*/s/ Mark E. Owens*
Mark E. Owens (0068335)
*Attorneys for Plaintiff*